UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICK JOSEPH,

                Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
CORRECTIONS, ASSISTANT DEPUTY KAREN
COLLINS a/k/a K. COLLINS, DEPUTY WARDEN
HAKIM S. EL QUHIR, CITY OF NEW YORK,
CAPTAIN DENISE COLLIER a/k/a N. COLLIER,
CAPTAIN MAXOLAINE MINGO a/k/a
M. MINGO, and CAPTAIN ADA PRESLEY a/k/a
PRESLEY,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

10-CV-1265 (NGG) (LB)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ MAY 13 2011 ★
BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Patrick Joseph ("Joseph"), pro se, brings this action against his current employer, the New York City Department of Corrections ("NYCDOC"),[1] and several of his supervisors (collectively, "Defendants"), under various federal and state causes of action. (Am. Compl. (Docket Entry # 17).) Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Defs.' Mot. (Docket Entry # 21).) As set forth below, the court converts Defendants' motion into one for summary judgment under Federal Rule of Civil Procedure 12(d), and grants summary judgment in favor of Defendants.

## I.  LEGAL STANDARDS

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present

---

[1] Following a conference with the court, Joseph filed a letter with the court on November 1, 2010 requesting permission to remove NYCDOC from his action. (Docket Entry # 19.) The court granted that request on November 2, 2010 (Docket Entry # 20.)

1

all the material that is pertinent to the motion." Id. On a motion for summary judgment, the court may consider "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[2] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000). Where a plaintiff proceeds pro se, the court reads his submissions liberally and interprets them as raising the strongest arguments they suggest. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

Here, Joseph filed an Amended Complaint with the court, attaching fifteen pages of exhibits related to his claims. (Am. Compl.) As part of their motion to dismiss, Defendants attached five exhibits, including letters purportedly written by Joseph to his union grievance committee and Joseph's disciplinary records. (Defs.' Mot. Exs. B-E.) Defendants also filed a notice, under Local Civil Rule 12.1, making Joseph aware that the court may convert its motion into one for summary judgment (the "Rule 12.1 Notice"). (Docket Entry # 24.) Joseph responded to Defendants' Rule 12.1 Notice by attaching an additional twenty-five exhibits to his

---

[2] This quote reflects the amendments to Federal Rule of Civil Procedure 56, which became effective December 1, 2010.

2

Opposition. (Pl.'s Opp'n (Docket Entry # 30) Exs. A-Y.) Therefore, all parties have had a reasonable opportunity to present all the material pertinent to Defendants' motion: Defendants have attached documentary evidence to their motion, and Joseph has done the same. Because the court considers these attached materials in its opinion, it converts Defendants' motion to dismiss to one for summary judgment under Federal Rule of Civil Procedure 12(d). See Mateo v. O'Connor, No. 08-cv-11053 (RJH) (DCF), 2010 WL 3199690, at *3 (S.D.N.Y. Aug. 12, 2010) (converting defendants' motion to dismiss to one for summary judgment, against a pro se plaintiff, where defendants notified plaintiff of their intent to convert their motion into one for summary judgment, and where the pro se plaintiff had an adequate opportunity to attach pertinent documents to his opposition).

## II. BACKGROUND

Joseph's allegations stem from a series of incidents from July 2008 to May 2009.

### A. The July 30 and August 18, 2008 Incidents

Joseph has been a corrections officer for NYCDOC at the Rose M. Singer Center on Rikers Island since June 29, 2006.[3] (Am. Compl. ¶¶ 2, 3.) On July 30, 2008, Defendant Captain Denise Collier ("Collier") requested that Joseph switch posts to relieve an officer who needed to go on an Emergency Medical Service ("EMS") "run."[4] (Pl.'s Opp'n Ex. B.) The following day, Joseph filed a union grievance against Collier for changing his post and not equitably assigning overtime to him. (Pl.'s Opp'n Ex. A at 1.) On August 14, 2008, Collier drafted a report to

---

[3] Joseph states in his Amended Complaint that Rikers Island is located in Queens, New York. (Am. Compl. ¶ 3.) This is incorrect; Rikers Island is located in Bronx County, New York. Brooks v. Strack, No. 98-CV-6528 (JG), 1999 WL 672949, at *4-5 (E.D.N.Y. Aug. 25, 1999). As such, the events giving rise to Joseph's Amended Complaint did not occur within the territorial limits of this district. See id. Therefore, although it is unclear whether venue is proper in this district, because Defendants have failed to raise this argument in their initial papers, they have waived any objections to improper venue. Benjamin v. Carusona, No. 09 Civ. 9722 (RWS), 2010 WL 4448213, at *7 (S.D.N.Y. Nov. 5, 2010) (citing Concession Consultants, Inc. v. Mirisch, 355 F.2d 369, 371 n.1 (2d Cir. 1966)).

[4] Both Plaintiff and Defendants use the terminology "an EMS run" to describe correction officers' duties in transporting inmates due to an emergency medical situation. The court adopts the terminology here.

3

Warden Michelle Mack ("Mack"), assuring her that Joseph was equitably receiving overtime, and explaining that she asked Joseph to change posts due to an EMS situation. (Pl.'s Opp'n Ex. B.)

Later, on August 18, 2008, Collier again requested that Joseph change posts. (Id. Ex. A at 3.) Joseph complained, and Collier filed a formal reprimand against Joseph. (Id.) Joseph then wrote a letter to Mack complaining about Collier's treatment of him. (Id. Ex. A at 2.)

### B. The April 10, 2009 Incident

On April 10, 2009, Defendant Captain Maxsolaine Mingo ("Mingo") asked Joseph to go on an EMS run. (Defs.' Mot. Ex. D.) Joseph informed Mingo that he was not qualified to participate in the EMS run because he was not qualified by NYCDOC to use a firearm. (Id.) Mingo, however, apparently believed that Joseph was qualified to use a firearm because "according to the Training Roster [Joseph] was qualified on 7-08-08." (Id.) Joseph explained to Mingo that he was not firearm qualified under NYCDOC's own regulations, and had brought this issue to NYCDOC's attention in December 2008. (Pl.'s Opp'n Ex. C at 1.) Mingo then asked Joseph to submit a report detailing his firearm qualification status. (Defs.' Mot. Ex. D.) Joseph submitted a report stating the same and attaching a letter he had written to Mack on December 5, 2008, in which he had requested training to become firearm qualified. (Pl.'s Opp'n Ex. G at 2.) The letter included a handwritten note in response, signed by Defendant Captain Ada Presley ("Presley") and dated December 15, 2008, stating: "As space becomes available at the [shooting] range you will be scheduled." (Id.)

The same day, after investigating the matter, Mingo found that although Joseph was not qualified to carry an NYCDOC firearm, Joseph was carrying a personal firearm. (Defs.' Mot. Ex. D.) An NYCDOC personnel officer informed Mingo that Joseph was required to surrender

4

his personal firearm, and Mingo ordered Joseph to do so. (Id.) Joseph refused. (Id.) Joseph then filed a departmental grievance against Mingo for asking him to write a report and ordering him to turn in his personal firearm. (Pl.'s Opp'n Ex. C at 1.) The following day, Joseph filed another departmental grievance against Collier, claiming that she had also requested him to turn in his firearm. (Id. Ex. C at 2.) On April 14, 2009, after refusing to turn in his personal firearm for several days, Mingo filed a Supervisor's Complaint Report against Joseph. (Defs.' Mot. Ex. D; Pl.'s Opp'n Ex. I.) On April 15, 2009, Joseph filed another departmental grievance against Collier and Mingo. (Defs.' Mot. Ex. E at 1.) On April 20, 2009, Mingo filed a letter with Warden Arthur Olivari explaining the necessity of filing a report against Joseph. (Pl.'s Opp'n Ex. I.) On June 19, 2009, the Commissioner of Correction held a hearing regarding Mingo's Supervisor's Complaint Report for Joseph's initial refusal to provide a report detailing his qualification status and his refusal to turn in his personal firearm. (Pl.'s Opp'n Ex. F.)

### C. The April 16, 2009 Incident

On April 16, 2009, Presley recommended Joseph for drug testing. (Am. Compl. ¶ 21.) Joseph claims Presley recommended him for drug testing in retaliation for his complaints against his supervisors. (Id.)

### D. The May 4, 2009 Incident

On May 4, 2009, Collier directed Joseph to submit a late slip and to accompany other NYCDOC officers en route to Elmhurst Hospital Prison Ward. (Defs.' Mot. Ex. F.) Rather than reporting to travel to Elmhurst, Joseph changed into civilian clothes and left work. (Id.) Joseph returned to work two hours later and was questioned by Collier, who directed him to file a report explaining his actions. (Id.) Joseph filed a report claiming that he left because he was needed at

home. (Pl.'s Opp'n Ex. L.) Collier filed her own report against Joseph for insubordination on May 12, 2009. (Defs.' Mot. Exs. F, K.)

### E. Joseph's Medical Leave and Request for Transfer

On May 5, 2009, Joseph began medical leave from his position at NYCDOC due to his high blood pressure. (Am. Compl. ¶ 23; Pl.'s Opp'n Ex. M.) Joseph returned to work on June 10, 2009. (Id.) Joseph claims he was placed on light duty until July 16, 2009. (Id. ¶ 23.) Joseph requested an interdepartmental transfer in July 2009. (See Pl.'s Opp'n Ex. N.) That transfer request was denied on August 10, 2009 due to "pending disciplinary action" against him. (Id.) On October 7, 2009, Joseph was designated as chronically absent by NYCDOC. (Pl.'s Opp'n Ex. P.)

### F. Joseph's EEOC Complaints

Joseph "contacted" the EEOC in June 2009 regarding a discrimination claim. (See Am. Compl. ¶ 29.) On June 5, 2009, the EEOC sent Joseph a letter stating that "the basis of [his] complaint is not established," and therefore, the EEOC could not investigate his claims. (Id. Ex B.) On June 16, 2009, Joseph sent another letter to the EEOC complaining about Collier and Mingo. (Id. Ex. D.) On August 27, 2009, Joseph filed a discrimination charge with the EEOC complaining that Collier and Mingo discriminated against him. (Id. Ex. C.; Pl.'s Opp'n Ex. E.) On January 7, 2010, the EEOC issued Joseph a right to sue letter. (Id. ¶ 31; Ex. A.) Joseph filed his Complaint on March 19, 2010. (Compl.)

## III. DISCUSSION

### A. Joseph's Amended Complaint

Joseph's Amended Complaint asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; New York State Human Rights Law (the

"State HRL"), N.Y. Exec. Law § 291; New York City Administrative Code, Civil Rights Law (the "City HRL"), N.Y.C. Admin. Code §§ 8-107, 8-502; and the Fourteenth Amendment to the U.S. Constitution by way of 42 U.S.C. § 1983. (Am. Compl. ¶¶ 44-80.)[5] Under each of these provisions, Joseph alleges that he was the victim of discrimination and retaliatory treatment by Defendants in relation to the complained-of incidents.

### B. Joseph's Title VII, State HRL, and Equal Protection Claims

#### 1. Discrimination

Title VII and the State HRL set forth parallel requirements for a plaintiff to establish a claim of discrimination. See White v. Eastman Kodak Co., 368 F. App'x 200, 202 n.1 (2d Cir. 2010). Further, "the analytical framework of a workplace equal protection claim parallels that of a discrimination claim under Title VII." Cunningham v. N.Y. State Dep't of Labor, 326 F. App'x 617, 620 (2d Cir. 2009). Because Joseph also brings equal protection claims under the New York State Constitution, that framework applies to those claims as well. Hayut v. State Univ. of N.Y., 352 F.3d 733, 754 (2d Cir. 2003) (citing Brown v. State, 89 N.Y.2d 172, 190 (1996)).

The court analyzes all of these claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See White, 368 F. App'x at 202 n.1; Schiano v. Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006). First, a plaintiff must establish a prima facie case of discrimination. To establish a prima facie case of discrimination, a plaintiff must demonstrate that: 1) he belonged to a protected class; 2) he was qualified for the position; 3) he was subjected to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128,

---

[5] Joseph mentions age discrimination once in his Amended Complaint: in the header of his claim of discrimination in violation of NYCHRL. (See Am. Compl. at 8.) The court assumes this one mention was a typographical error, and will not construe Joseph as bringing an age discrimination claim.

7

137-38 (2d Cir. 2003). If the plaintiff can establish a prima facie case of discrimination, the burden then shifts to the defendant to offer a legitimate, non-discriminatory rationale for its actions. McDonnell Douglas, 411 U.S. at 802. Should a defendant offer a neutral explanation for its actions, the plaintiff may defeat summary judgment by offering evidence sufficient to show that the proffered neutral explanation was a pretext for discrimination. Id. at 804.

Under this framework, Joseph fails to establish a prima facie case of discrimination under Title VII, the State HRL, or the equal protection clauses to the U.S. or New York State Constitutions. Even construing his Amended Complaint liberally, none of the incidents described in his Amended Complaint constitute an "adverse employment action." For purposes of Title VII, an adverse employment action must be "a 'materially adverse change' in the terms and conditions of employment." See Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). This "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Stoddard v. Eastman Kodak Co., 309 F. App'x 475, 478 (2d Cir. 2009) (quoting Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008)). The adverse action must rise to the level of "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. at 478-79.

Beginning with Joseph's most serious complaint, Joseph claims that Defendants' refusal of his request to transfer posts on August 10, 2009 constituted an adverse employment action. (See Pl.'s Opp'n Ex. N.) In some circumstances, denials of transfer requests may constitute an adverse employment action. Beyer v. County of Nassau, 524 F.3d 160, 164 (2d Cir. 2008). To qualify, a plaintiff must show "objective indicia of material disadvantage; subjective, personal disappointment is not enough." Id. (internal alterations omitted). Even construing Joseph's

papers liberally, Joseph alleges nothing in his Amended Complaint, nor provides any evidence on summary judgment, that Defendants' refusal of his transfer request caused him anything more than "subjective, personal disappointment." Joseph's dejection, however, is not enough to establish a prima facie case of discrimination surrounding his transfer request.

Aside from his transfer request, none of the remaining incidents described in Joseph's Amended Complaint even remotely rise to the level of severity required to establish a prima facie case of discrimination. First, Defendants' designation of Joseph as chronically absent following his return to work after medical leave was well within NYCDOC's rights to take corrective action against an absentee employee. See Gentile v. Potter, 509 F. Supp. 2d 221, 241 (E.D.N.Y. 2007) (right of employer to mark employees as "absent without leave" ("AWOL") precludes finding of adverse employment action where employee is actually AWOL); see also Lucas v. Potter, Civ. No. 3:08CV480 (HBF), 2010 WL 148451, at *8 (D. Conn. Jan. 12, 2010) (marking postal employee as AWOL not an adverse employment action). And Defendants' filing of Complaint Reports against Joseph—all for insubordination not contested by Joseph— did not constitute an adverse employment action against Joseph because none of those reports materially altered Joseph's working conditions. See Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76 (2d Cir. 2001) ("notice of discipline" not a materially adverse employment action where plaintiff failed to describe how notice affected her), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Milford v. N.Y.C. Bd. of Health, Nos. 02-cv-2834 (SJF) (LB), 03-cv-2765 (SJF) (LB), 2005 WL 195561, at *4 (E.D.N.Y. Jan. 27, 2005) (warning notices due to insubordination not adverse employment actions where insubordinate behavior is not contested).

9

Joseph's remaining complaints are even less significant. Defendants' requests that Joseph temporarily change posts to relieve a colleague in an emergency situation, as in the July 30 and August 18, 2008 incidents, does not approach a "materially adverse change" for the purpose of establishing a prima facie case. See Reyes v. City of Bridgeport, Civ. No. 07CV1236 (WWE), 2009 WL 3571305, at *4 (D. Conn. Oct. 26, 2009) (temporary assignment to the midnight shift not an adverse employment action); DeMars v. O'Flynn, 287 F. Supp. 2d 230, 245-46 (W.D.N.Y. 2003) (temporary assignment to the day shift not an adverse employment action); Ofori-Awuku v. Epic Sec., No. 00 CIV. 1548 (AGS), 2001 WL 180054, at *4 (S.D.N.Y. Feb. 23, 2001) (change of location for private security guard not an adverse employment action). Defendants' requests that Joseph file written reports as part of his job are similarly de minimis. See Carter v. New York, 310 F. Supp. 2d 468, 478-79 (N.D.N.Y. 2004) (requiring plaintiff to document travel expenses was not an adverse employment action); Hahn v. Attica, No. 98-CV-0516E (SR), 2000 WL 33159187, at *8 (W.D.N.Y. Dec. 1, 2000) (requiring plaintiff to file written report to obtain bereavement leave not an adverse employment action). Defendants' demand that Joseph turn in his personal firearm—where Joseph refused to do so—was also not a materially adverse change to his employment status, see Como v. O'Neill, No. 02 Civ. 0985(HB), 2002 WL 31729509, at *2 (S.D.N.Y. Dec. 4, 2002) (taking away plaintiff's weapon for safety concerns not an adverse action), nor was Defendants' demand that Joseph take a single drug test. Forts v. City of New York Dep't of Corr., No. 00 Civ. 1716 (LTS) (FM), 2003 WL 21279439, at *9 (S.D.N.Y. June 4, 2003) (Department of Correction's requirement that plaintiff take multiple drug tests was not an adverse employment action). Joseph's discrimination claims under Title VII, the State HRL, and the equal protection clauses to the U.S. and New York State Constitutions wholly fail.

2. Retaliation

The McDonnell burden shifting framework also applies to claims for retaliation. Platt v. Inc. Vill. of Southampton, 391 F. App'x 62, 64 n.1 (2d Cir. 2010) ("We analyze retaliation and discrimination claims under the ADA and Title VII under the same burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green."). A plaintiff must establish a prima facie case of retaliation by showing that "(1) [he] participated in a protected activity, (2) the defendant knew of the protected activity; (3) [he] experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action." Nieves v. Angelo, Gordon & Co., 341 F. App'x 676, 679 (2d Cir. 2009).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination" in violation of Title VII. Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000). Generally, internal complaints about employer treatment constitute "protected activity" in establishing a prima facie retaliation claim. Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178-80 (2d Cir. 1996). Here, Joseph filed several internal complaints against his supervisors for each incident described above. Further, the evidence is uncontested that those supervisors were aware of Joseph's internal complaints. Therefore, Joseph has met the first two prongs of establishing a prima facie retaliation claim.

The third prong, whether the plaintiff suffered an "adverse employment action," differs from the "adverse employment action" standard in a discrimination claim. Here, in determining whether a plaintiff has experienced an "adverse employment action," the court must ask whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68

(2006). Nonetheless, "the application of pre-existing disciplinary policies to a plaintiff 'without more, does not constitute adverse employment action'" in the retaliation context. Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010) (quoting Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006)). Where the adverse employment action complained of was "consistent with [the employer's] discipline policy, [the plaintiff does] not suffer a materially adverse action . . . . [and has] not made out a prima facie case of retaliation." Chang v. Safe Horizons, 254 F. App'x 838, 839 (2d Cir. 2007).

Here, the evidence offered by both Joseph and Defendants demonstrates that almost all of the putative "adverse actions" were consistent with preexisting NYCDOC disciplinary and other policies. To wit:

- Collier's August 18, 2008 and May 12, 2009 reprimands against Joseph for insubordination were directly pursuant to NYCDOC Rules 3.20.180 and 3.20.190, governing reports due to insubordination (Pl.'s Opp'n Exs. A, F, K);

- Mingo's command that Joseph write a report detailing his firearm qualification status and turn in his personal firearm was in accordance with the Rose M. Singer Center Security Office's safety policy that "[m]embers of the Department shall only carry firearms that have been authorized" (id. Ex. I);

- Joseph's subsequent administrative hearing regarding his refusal to turn in his personal firearm, even though he was not authorized to carry one, was conducted in accordance with the Rules of the New York City Office of Administrative Trials and Hearings (id. Ex. F);

- Presley's request that Joseph take a drug test appears to be in line with the NYCDOC's policy regarding random drug testing (id. Ex. D); and

- Joseph's designation as chronically absent was in accordance with NYCDOC's Absence Control/Uniformed Sick Leave Policy § III.G (id. Ex. Q at 2).[6]

---

[6] The parties present no evidence that the denial of Joseph's interdepartmental transfer request followed any preexisting NYCDOC policies. As discussed below, however, this allegation is insufficient to support a claim of retaliation because Defendants have offered a legitimate, non-discriminatory reason for it and Joseph has not contested this reason.

12

Even assuming, however, that Joseph suffered adverse employment actions that support his retaliation claim, *and* that Joseph could establish a causal connection between those actions and any protected activities, Defendants have offered legitimate, non-retaliatory reasons for those actions. Indeed, Joseph's own exhibits demonstrate Defendants' quite legitimate reasons for the actions taken against him. Collier's second request for Joseph to switch posts was due to an emergency medical situation. (Pl.'s Opp'n Ex. B.) Collier stated to Warden Mack that she filed a formal reprimand against Joseph, not in retaliation for his union grievance against her, but because he was insubordinate by leaving work in violation of a direct order from his superiors. (Id. Ex. A.) Defendants' repeated requests that Joseph turn in his personal firearm were not retaliatory. Rather, they were indisputably because Joseph was not qualified to carry a firearm. (Id. Ex. G.) Presley's request for Joseph to undergo drug testing was in accordance with NYCDOC's random employee drug-screening policy. (Id. Ex. D.) Collier's report against Joseph for insubordination was not retaliation; it was because Joseph was being insubordinate for refusing to write a report explaining his absence on May 4, 2009. (Id. Exs. F, K.) NYCDOC's characterization of Joseph as habitually absent was because Joseph *was* habitually absent: *fifty-nine times* in 2009. (Id. Ex. Q at 3.) And Defendants' denial of Joseph's transfer request clearly stated that Joseph's request for transfer was denied because there was "pending disciplinary action" against him. (Id. Ex. N.)

Even construing his submissions liberally, Joseph does not contest a single one of these proffered reasons. Rather, Joseph simply states that he "has been harassed, targeted, and retaliated against with a series of deceptive disciplinary charges" for his conduct. (Pl.'s Opp'n ¶ 7.) This conclusory statement is not enough to overcome Defendants' legitimate reasons for the adverse employment actions under the burden-shifting framework in McDonnell. See Singh v.

N.Y.C. Off-Track Betting Corp., No. 03-cv-5238 (JGK), 2005 WL 1354038, at *13 (S.D.N.Y. June 8, 2005) ("conclusory allegations" of retaliation are insufficient to defeat a motion for summary judgment in the face of legitimate, non-pretextual reasons for adverse employment actions).

### 3. Hostile Work Environment

To the extent Joseph asserts hostile work environment claims against Defendants under Title VII or the State HRL, those claims also fail. To make out a hostile work environment claim, a plaintiff must show that his workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). A plaintiff "must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). A plaintiff must also show that the relevant conduct occurred because of his membership in a protected class. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). To survive a motion for summary judgment on a hostile work environment claim, a plaintiff must demonstrate: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks and punctuation omitted).

Joseph has failed to proffer any evidence that his workplace was permeated with discriminatory animus. Among all the papers Joseph has submitted to the court—both of his Complaints, his opposition to Defendants' motion for summary judgment, and the twenty-five

14

attached exhibits—not one presents even a shred of evidence that Defendants were hostile to Joseph's protected class: Haitians. Joseph has not presented a single statement made by any of the Defendants or described a single act in the course of his employment that even the most racially sensitive person could possibly construe as discriminatory. Joseph's subjective feelings of discrimination, unattached from any inference that his employers discriminated against Haitians, does not make out a hostile work environment claim against Defendants.

### C. Joseph's City HRL Claim

Although the language of the City HRL tracks both Title VII and the State HRL, the New York City Local Civil Rights Restoration Act of 2005 affords claims under the City HRL a more liberal construction to accomplish "the uniquely broad and remedial purposes [of the City HRL], regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 31 (2009). The Restoration Act put the courts on notice that

> (a) they had to be aware that some provisions of the NYCHRL were textually distinct from its State and federal counterparts, (b) all provisions of the NYCHRL required independent construction to accomplish the law's uniquely broad purposes and (c) cases that had failed to respect these differences were being legislatively overruled.

Id. at 32. The practical effect of this change is to eliminate the requirement that an adverse employment action be *materially* adverse to the plaintiff. Id. at 33-34. Discrimination or retaliation in "any manner" is now prohibited by the City HRL. Id. at 33; N.Y.C. Admin. Code § 8-107. Nonetheless, a plaintiff must still link the adverse action to a discriminatory or retaliatory motivation. Williams, 872 N.Y.S.2d at 35. Where a plaintiff fails to do so, his claims under the City HRL fail. Id.

Construing his Amended Complaint liberally, Joseph claims that Defendants discriminated against him on the basis of his national origin. (Am. Compl. ¶¶ 60-62.) For the same reasons that Joseph's hostile work environment claims fail—because he has entirely failed allege any facts giving rise to an inference of discrimination—his City HRL claims fail, too.

Joseph's retaliation claims under the City HRL also do not survive. Even assuming, arguendo, that Joseph has set forth a prima facie case of retaliation under the City HRL, Defendants have "offer[ed] a legitimate, non-discriminatory rationale for [their] actions" in each of the incidents, as described above. See McDonnell Douglas, 411 U.S. at 802; see also Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (McDonnell burden shifting framework still applies to the City HRL claims even after the Restoration Act). Joseph has not brought forth even an iota of evidence demonstrating that any of these actions were merely pretext in a skirmish of retaliation. If anything, given Joseph's work history, Defendants have shown extreme patience in dealing with Joseph's work habits. Joseph's retaliation claim under the City HRL cannot survive.

## IV. CONCLUSION

For the reasons discussed above, the court converts Defendants' motion to dismiss into a motion for summary judgment. Defendants' motion for summary judgment is GRANTED in its entirety. The Clerk of Court is directed to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
MAY ~~April~~ 12, 2011

NICHOLAS G. GARAUFIS
United States District Judge